UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

HOLLY HARLOW,

    *Plaintiff*,

    v.                         Case No.:

**EXPERIAN INFORMATION
SOLUTIONS, INC., OMNI
FINANCIAL OF NEVADA, INC.,**
*doing business as* **OMNI FINANCIAL,**
*and* **XACTUS, LLC,**

    *Defendants*.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Holly Harlow ("**Ms. Harlow**" or "**Plaintiff**"), by and through her attorneys, Seraph Legal, P.A., and complains of Defendants, Experian Information Solutions, Inc. ("**Experian**"), Omni Financial of Nevada, Inc., doing business as Omni Financial ("**Omni Financial**"), and Xactus, LLC ("**Xactus**"), (jointly, the "Defendants") and states as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff brings an action against Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

**JURISDICTION AND VENUE**

2.    Subject matter jurisdiction for Plaintiff's FCRA claims arises under FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2), because Defendants committed and/or caused the acts of which Plaintiff complains of in the Middle District of Florida.

## PARTIES

5. **Ms. Harlow** is a natural person over the age of 18 who at all times relevant resided in the City of Belleview, Marion County, Florida

6. Ms. Harlow is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, California 92626.

8. Experian, is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324**.

9. Experian is a consumer reporting agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

10.     Omni Financial is a Nevada corporation with a principal business address of 6655 West Sahara Avenue, Suite C104, Las Vegas, NV 89146.

11.     Omni Financial is registered to do business in the State of Florida and its Florida registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

12.     Omni is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. § 1681s-2. Specifically, Omni is an entity that regularly and in the ordinary course of business furnishes information regarding consumers to one or more CRAs about its transactions or experiences with those consumers.

13.     **Xactus** is a Delaware limited liability company with a principal business address of **370 Reed Road, Suite 100, Broomall, Pennsylvania, 19008.**

14.     Xactus' Delaware registered agent is **Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808**.

15.     Xactus operates as a specialized CRA known as a "reseller" under 15 U.S.C. § 1681a(u), which defines a reseller as a CRA that:

(1) Assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and

(2) Does not maintain a database of the assembled or merged information from which new consumer reports are produced.

## FACTUAL ALLEGATIONS

### Duplicate Accounts – Omni Financial Account

16. On or about December 20, 2017, Ms. Harlow opened a credit account with Omni Financial with an account number beginning with "HARL88" (the "Omni Account").

17. At some point thereafter, Omni Financial charged off the Omni Account.

18. On or around August 29, 2025, Omni Financial sold, assigned, or otherwise transferred the underlying debt to a debt buyer, Resurgent/LVNV Funding ("LVNV Funding").

19. As the result of the sale and assignment Omni Financial no longer owned the Omni Account, had no title to it, and lacked any legal right or ability to collect a balance from Ms. Harlow.

20. Thus, following the transfer, Omni Financial was required under industry standard credit reporting guidelines, Metro 2, to update its reporting to the CRAs, including Experian, to reflect that the account balance was $0, that the account was closed, and that the debt had been transferred or sold to another lender.

21. Despite this, Experian continued to publish an active Omni Account balance while simultaneously incorporating the newly acquired LVNV Funding collection account into Ms. Harlow's credit file. **SEE PLAINTIFF'S EXHIBIT A**.

22.    Specifically, on or around December 3, 2025, LVNV began reporting the past-due collection balance of $6,244 that it purchased from Omni Financial to Experian. *See Id.*

23.    At the same time, on or around December 24, 2025, Omni Financial continued to report the same underlying debt with an active past-due balance of $6,244. *See Id*.

24.    These two tradelines have identical identifying data including, the same account number beginning with "HARL88," matching "on record to" dates of July 2026, and the same recent balance of $6,244 as of December 2025. *Id.*

25.    Consequently, throughout December 2025, Experian continued to include the Omni Financial tradeline as an open, past-due balance that duplicated the newly reporting LVNV Funding collection account in its credit file on Ms. Harlow and in its reports sold on Ms. Harlow.

26.    On December 8, 2025, Ms. Harlow applied for a mortgage with Success Mortgage Partners, Inc. ("Success Mortgage"), seeking to purchase a home for her family and herself.

27.    As part of the application process, Success Mortgage requested a "tri-merge" credit report from Xactus regarding Ms. Harlow.

28.    Xactus in response to Success Mortgage's request, requested and obtained a consumer report from Experian regarding Ms. Harlow.

29.    Xactus then merged the credit information it obtained from Experian with information it obtained from the other CRAs, Equifax and Trans Union, into a

single, composite report often referred to as a "tri-merge" report, which it provided to Success Mortgage.

30.    The merged file included two tradelines representing the same debt, under the header of "COLLECTIONS," reported as follows:

| COLLECTIONS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **LVNV FUNDING** C/O Resurgent Capital Services Greenville, SC 29602 877-527-4484 | ECOA Individual | Opened 08/29/2025 | Last Activity | Closed | Reported 12/03/2025 | Credit Limit | High Credit $6,244 | | * |
| | Account Type Open | Collateral | Terms | Reported On **TUC-B1, EXP-B1** | Manner of Payment Collection (O9B) | | Past Due $0 | Payment | Balance $6,244 |
| Account Number HARL882808 | Comment ACCOUNT INFORMATION DISPUTED BY CONSUMER / CREDITOR: 12 OMNI FINANCIAL OF COLORADO IN | | | | | | | | |
| **OMNI FINANCIAL** PO Box 53628 Fayetteville, NC 28305 | ECOA Individual | Opened 12/20/2017 | Last Activity 11/01/2019 | Closed 05/2020 | Reported 11/25/2025 | Credit Limit | High Credit $6,963 | | * |
| | Account Type Installment | Collateral Unsecured Loan | Terms 34 Payments | Reported On **EXP-B1, EQX-B1, TUC-B1** | Maximum Delinquency 10/2023, $3,366 | Manner of Payment Charged Off (I09) | | | |
| Account Number HARL882808 | Months Reviewed 93 | 30-59 Days Late 1 Time | | 60-89 Days Late 1 Time | | 90-119 Days Late 4 Times | Past Due $6,244 | Payment | Balance $6,244 |
| | | 120-149 Days Late 0 Times | | 150+ Days Late 0 Times | | | | | |
| | Comment Delinq 180 / **CONSUMER STATEMENT** DELINQUENCY DUE TO EXTENDED UNEMPLOYMENT. | | | | | | | | |

31.    Both tradelines reported the same account number of HARL882808, the same balance of $6,244, and the LVNV tradeline indicated the original creditor was "OMNI FINANCIAL".

32.    Thus, the LVNV and Omni Financial tradelines clearly concern an identical, singular, debt belonging to Ms. Harlow.

33.    Despite the obvious duplication of the $6,244 Omni Financial debt, Xactus included the duplicate tradelines in the "tri-merge" it provided to Success Mortgage, regarding Ms. Harlow.

34.    When preparing reporting, Xactus, as well as Experian, were required to use reasonable procedures to ensure maximum possible accuracy of the reports they produced. *See* 15 U.S.C. § 1681e(b).

35. Despite this when Xactus assembled data from the Big Three into one report on Ms. Harlow, it stated that Ms. Harlow had two derogatory accounts concerning an Omni Financial debt, even with the information being clearly false.

### Ms. Harlow's Dispute of the Duplicate Tradeline

36. On December 30, 2025, Ms. Harlow requested and received her consumer disclosure from Experian.

37. On or about December 30, 2025, Ms. Harlow disputed the LVNV tradeline to Experian, indicating that the same underlying debt is also being reported by Omni Financial.

38. When a consumer submits a dispute regarding a particular tradeline to Experian, Experian sends an Automated Consumer Dispute Verification ("ACDV") request to the furnisher reporting the tradeline.

39. Experian sends the ACDV to the furnisher via e-OSCAR, an online system Experian uses to communicate with data furnishers, like Omni Financial.

40. When a furnisher responds to the ACDV via e-OSCAR, the person sending the response must electronically sign the response and confirm as follows:

> By submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

41. Ms. Harlow's dispute to Experian stated that the reason for her dispute was that the same debt was also being reported by LVNV therefore creating duplicate tradelines.

42. Upon receipt of Ms. Harlow's dispute concerning the Omni Financial tradeline, Experian sent Omni Financial an ACDV form through e-OSCAR, asking Omni Financial to conduct a reasonable investigation into the dispute.

43. Omni responded to the ACDV by indicating that its reporting of the Omni Account was accurate and continued reporting the tradeline to Experian.

### Experian's Investigation Was Unreasonable

44. The FCRA required that each CRA conduct its own independent investigation when a consumer submits a dispute. *See* 15 U.S.C. § 1681i.

45. Thus, upon receipt of Ms. Harlow's dispute regarding the Omni Financial tradeline, Experian was legally required to investigate the dispute.

46. However, Experian exclusively relied upon Omni Financial's response to the ACDV rather than conduct an independent investigation.

47. Experian did not review the information Ms. Harlow included in her dispute concerning the Omni Financial tradeline.

48. Over the last 40 years, courts in this district have recognized that a CRA is required to perform an independent reinvestigation when a consumer submits a dispute, rather than relying exclusively on information provided by the data furnisher. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D. Fla.1985).

49. The CRA must make some independent investigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("Merely reporting whatever information the creditor furnished was not reasonable,

especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].").

50.    Had Experian conducted any meaningful investigation of its own, it would have determined that the debt concerning the Omni Account was reporting twice; once under Omni Financial, and once under LVNV and either suppress or delete the duplication from Ms. Harlow's file.

51.    Specifically, a reasonable investigation would have involved cross-referencing the internal data fields of both tradelines, such as the original creditor name, matching account identifiers, and balance amounts to spot clear logical contradiction of a single debt being counted twice.

52.    Rather than simply "parroting" the automated confirmation sent back by Omni Financial through the e-OSCAR system, Experian should have critically evaluated Ms. Harlow's dispute narrative to recognize that the Omni Financial tradeline and the LVNV tradeline represented the exact same debt.

53.    Due to numerous and obvious red flags, Experian knew that the Omni Financial and LVNV tradeline represented the same underlying debt.

54.    Experian has no reasonable procedures in place to prevent obvious duplicate debts from appearing multiple times in a consumer's credit history.

55.    Despite LVNV reporting to Experian who the original creditor was, the tradeline having the same balance and account number, and Ms. Harlow's disputes, Experian continued to include both tradelines in her credit file.

**Omni Financial's Investigation Was Unreasonable**

56.     Upon receipt of the ACDV from Experian, Omni Financial was placed on notice of Ms. Harlow's dispute.

57.     As notice of dispute was received from a CRA, Omni Financial was thereafter required by the FCRA to make a reasonable investigation into the dispute. 15 U.S.C. § 1681s-2(b).

58.     Omni Financial failed to make any reasonable investigation into the dispute it received from Experian concerning the Omni Financial tradeline and LVNV tradeline. Instead, it simply verified that the information regarding the debt reporting to Experian matched what its own internal system showed.

59.     The crux of Ms. Harlow's dispute was that the same debt was being reported twice, which she clearly indicated in her dispute.

60.     A reasonable investigation would have required Omni Financial to recognize that it sold the debt concerning the Omni Account to LVNV, and therefore no longer owned the debt and to cease reporting the debt to Experian.

61.     Therefore, Omni Financial failed to perform a reasonable investigation into Ms. Harlow's dispute of the Omni Financial tradeline.

**Experian and Xactus' Duplicate Tradeline Publication Harmed Plaintiff**

62.     Experian is liable for its systemic failure to maintain reasonable procedures to ensure maximum possible accuracy under 15 U.S.C. § 1681e(b) concerning Ms. Harlow's credit file.

63.     Experian could have easily prevented or resolved the duplication prior to Plaintiff's dispute, as every necessary data point to flag the automated system error—

including identical account prefixes, matched balances, and identical credit purge dates—resided concurrently within Experian's own internal consumer database.

64.     Instead, Experian blindly published both active, past-due tradelines for the same individual debt to prospective creditors.

65.     As a result of Experian's inclusion of the duplicate tradelines, Plaintiff's total derogatory liability profile was artificially inflated by an additional $6,244, severely damaging her credit score and debt-to-income (DTI) ratios.

66.     Specifically, during the window of time in which Experian published this double-counted debt, Ms. Harlow applied for residential mortgage financing with Success Mortgage.

67.     On December 8, 2025, the specialized mortgage credit reseller, Xactus requested and pulled Ms. Harlow's Experian credit file with the following hard inquiry:

| Account name | Date of request |
| --- | --- |
| XACTUSLLC/SUCCESS M | 12/08/2025 |
| **Address identification number** | **Comments** |
| 1013164187 | Real Estate. This inquiry is scheduled to continue on record until Jan 2028. |

68.     This inquiry occurred during the window of time in which Experian double-reported the underlying debt of the Omni Account.

69.     Thus, Experian generated and sold a credit file to Xactus that falsely inflated Ms. Harlow's past-due collection liabilities by an additional $6,244.

Page **11** of **28**

70.    Experian transmitted the inaccurate duplicate Omni Financial and LVNV Funding tradelines to Xactus who subsequently incorporated Experian's double-reported data directly into its own credit file on Ms. Harlow. **SEE PLAINTIFF'S EXHIBIT B.**

71.    In the regular course of its business as a specialized reseller and CRA, Xactus is not a mere conduit of raw data; rather, it takes data streams from separate nationwide credit bureaus and intentionally assembles, filters, and merges them into a brand-new, unified consumer report layout.

72.    Indeed, Courts have found that consumer reporting agencies, *including resellers*, are required to maintain reasonable procedures to ensure the maximum possible accuracy of the information they report. *See e.g., Poore v. Sterling Testing Sys.,* 410 F. Supp. 2d 557, 566 (E.D. Ky. 2006) (Clarifying that resellers are considered consumer reporting agencies under the FCRA and are obligated to comply with § 1681e(b) unless a specific statutory provision provides otherwise); *Starkey v. Experian Info. Sols., Inc.,* 32 F. Supp. 3d 1105, 1109 (C.D. Cal. 2014) (Finding the FCRA required the Court to apply the same the definition of "inaccurate" to a report prepared by reseller that it would apply to a report prepared by any other credit reporting agency).

73.    On or about December 8, 2025, Xactus engaged in these exact merging and assembling activities regarding Ms. Harlow's consumer credit information for the

purpose of selling and furnishing a consumer report to Success Mortgage. **SEE PLAINTIFF'S EXHIBIT B.**

74.    During this process, Xactus received data from Experian that contained the patently contradictory and duplicate Omni Financial and LVNV Funding tradelines.

75.    On its face, the data provided to Xactus indicated the Omni Financial and LVNV Funding tradelines contained identical identifying markers, including matching account numbers beginning with "HARL88," matching "on record to" dates of July 2026, and identical past-due balances of $6,244.

76.    Despite possessing identical identifying data that clearly signaled a single underlying debt that had been sold or transferred, Xactus' automated data-merging systems failed to cross-check, flag, or suppress the duplicate entry.

77.    Instead, Xactus affirmatively chose to compile, format, and merge both entries into the final consumer report it generated on Ms. Harlow, thereby creating a patently inaccurate document that falsely duplicated Plaintiff's actual liabilities.

78.    On or about December 8, 2025, Xactus published and sold this newly assembled and inaccurate consumer report to Success Mortgage, thereby representing to the prospective lender that Ms. Harlow possessed an additional $6,244 inactive, past-due derogatory collection account.

79.    At the time of this assembly and transmission, Xactus maintained a policy, practice, or procedure of blindly relying on whatever data it imported from nationwide databases and deliberately chose not to implement basic algorithmic

screening mechanisms or software filters capable of identifying facial duplications resulting from debt sales.

80. Xactus knew that its systemic failure to implement automated duplication filters during its assembly and merging phase would result in the direct publication of materially misleading consumer reports to mortgage underwriters.

81. The resulting consumer report generated and sold by Xactus was not a mere mirror image of raw data, but a uniquely formatted product of Xactus' own assembly process that, upon information and belief, directly caused the distortion of Plaintiff's debt-to-income underwriting ratios and severely damaged her creditworthiness in the eyes of Success Mortgage.

82. As a direct result of Experian and Xactus' publications of the inaccurate, double-reported balances, Ms. Harlow's mortgage application was heavily flagged, delayed, and subjected to exhaustive underwriting scrutiny due to an artificially distorted debt-to-income ratio and multiple open collections.

83. Experian's publication of the false data caused Ms. Harlow concrete actual damages, including out-of-pocket costs, extended transaction processing penalties, severe emotional distress, anxiety, and frustration.

84. Defendants' conduct described herein has caused Ms. Harlow to suffer damage to her reputation, damage to her credit scores, and wasted time.

85. Ms. Harlow has hired the aforementioned law firm to represent her in this matter and has assigned her right to attorney fees and costs to the firm.

## COUNT I
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

86.   Ms. Harlow adopts and incorporates paragraphs 1 – 85 as if fully stated herein.

87.   Experian willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Harlow, as reasonable procedures would not have resulted in Experian's sale of consumer reports containing duplicate tradelines of the underlying Omni Account.

88.   Experian has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with duplicate tradelines in consumers' credit disclosures.

89.   Experian's conduct was thus willful or done with a reckless disregard for Ms. Harlow's rights under the FCRA.

90.   As a result of its conduct, Experian is liable to Ms. Harlow pursuant to the FCRA for the greater of Ms. Harlow's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Harlow respectfully requests this Honorable Court enter judgment against Experian for:

a.   The greater of Ms. Harlow's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT II
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

91.  Ms. Harlow adopts and incorporates paragraphs 1 – 85 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

92.  Experian owed Ms. Harlow a legal duty to utilize reasonable procedures to ensure the maximum possible accuracy of its consumer reports regarding Ms. Harlow.

93.  Experian breached its duty when it sold consumer reports containing a duplicate tradeline concerning the underlying Omni Account to a third-party reseller, Xactus, thus failing to execute basic accuracy safeguards.

94.  Experian's breach amounts to a negligent violation of **15 U.S.C. § 1681e(b)**, and Ms. Harlow is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Harlow respectfully requests this Honorable Court enter judgment against Experian for:

a.  Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.     Such other relief that this Court deems just and proper.

## COUNT III
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA,
## 15 U.S.C. § 1681i(a)(1)(A)

95.     Ms. Harlow adopts and incorporates Paragraphs 1 – 85 as if fully restated herein.

96.     Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on at least one occasion, to conduct a reasonable investigation into dispute of the Omni Financial tradeline by Ms. Harlow, since any reasonable investigation would have concluded that the Omni Financial tradeline concerned a debt that was also being reported by LVNV, therefore creating duplicate tradelines.

97.     Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not.

98.     Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Harlow.

99.     Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Harlow for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Harlow respectfully requests this Honorable Court enter judgment against Experian, ordering:

a.  The greater of statutory damages of $1,000 per incident or Ms. Harlow's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper

## COUNT IV
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count III)

100.  Ms. Harlow adopts and incorporates Paragraphs 1 – 85 as if fully restated herein, and pled strictly in the alternative to Count III.

101.  Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on at least one occasion, to conduct a reasonable investigation into dispute of the Omni Financial tradeline by Ms. Harlow, since any reasonable investigation would have concluded that the Omni Financial tradeline concerned a debt that was also being reported by LVNV, therefore creating duplicate tradelines.

102.  Experian owed Ms. Harlow a legal duty to conduct a reasonable investigation into her dispute.

103.  Experian breached this duty when it failed to make a reasonable investigation.

104. Experian's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Harlow for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Harlow respectfully requests this Honorable Court enter judgment against Experian, ordering:

a.   Ms. Harlow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

**COUNT V**
**XACTUS' WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

105. Ms. Harlow adopts and incorporates paragraphs 1 – 85 as if fully stated herein.

106. Xactus willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Harlow, as reasonable procedures would not have resulted in Xactus' sale of consumer reports containing duplicate tradelines of the underlying Omni Account.

107. Xactus knows that as a specialized CRA, it is required to maintain reasonable procedures under 15 U.S.C. 1681e(b).

108. Xactus' conduct was thus willful or done with a reckless disregard for Ms. Harlow's rights under the FCRA.

109.    As a result of its conduct, Xactus is liable to Ms. Harlow pursuant to the FCRA for the greater of Ms. Harlow's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Harlow respectfully requests this Honorable Court enter judgment against Xactus for:

a.  The greater of Ms. Harlow's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT VI
## XACTUS' NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count V)

110.    Ms. Harlow adopts and incorporates paragraphs 1 – 85 as if fully stated herein, and pleads this count strictly in the alternative to Count V.

111.    Xactus owed Ms. Harlow a legal duty to utilize reasonable procedures to ensure the maximum possible accuracy of its consumer reports regarding Ms. Harlow.

112.    Xactus breached its duty when it sold consumer reports containing a duplicate tradeline concerning the underlying Omni Account to Success Mortgage Partners, thus failing to execute basic accuracy safeguards.

113. Xactus' breach amounts to a negligent violation of **15 U.S.C. § 1681e(b)**, and Ms. Harlow is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Harlow respectfully requests this Honorable Court enter judgment against Xactus for:

a.   Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   Such other relief that this Court deems just and proper.

**COUNT VII**
**OMNI FINANCIAL'S WILLFUL VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681s-2(b)**

114. Ms. Harlow adopts and incorporates paragraphs 1 – 85 as if fully stated herein.

115. Omni Financial violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation into a dispute made by Ms. Harlow, to Experian regarding the Omni Financial tradeline.

116. Any reasonable investigation would have determined that the underlying debt was sold to LVNV, and therefore Omni Financial should seize reporting the same debt to avoid duplicate reporting.

117. Omni Financial's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable

investigations, and its policies could reasonably be foreseen to cause harm to Ms. Harlow.

**WHEREFORE,** Ms. Harlow respectfully requests this Honorable Court enter judgment against Omni Financial for:

a.    The greater of Ms. Harlow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT VIII
### OMNI FINANCIAL'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### (Pled in the Alternative to Count VII)

118.    Ms. Harlow adopts and incorporates paragraphs 1 – 85 as if fully stated herein and pled strictly in the alternative to Count VII.

119.    Omni Financial owed Ms. Harlow a legal duty to conduct a reasonable investigation into Ms. Harlow's dispute upon receiving notice from Experian.

120.    Omni Financial violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation into Ms. Harlow's dispute after receiving notice of the dispute from Experian.

121.    Any reasonable investigation would have determined that the underlying debt was sold to LVNV, and therefore Omni Financial should seize reporting the same debt to avoid duplicate reporting.

122.    Omni Financial's conduct, action, and inaction was the result of negligence.

**WHEREFORE,** Ms. Harlow respectfully requests this Honorable Court enter judgment against Omni Financial for:

a.    Ms. Harlow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Ms. Harlow hereby demands a jury trial on all issues so triable.

Respectfully submitted on July 16, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Christian Cok*
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@seraphlegal.com
3505 E Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230 (Ext: 307)
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A.    Plaintiff's Experian Consumer Disclosure, Omni Financial and LVNV Funding Duplicate Tradelines, December 30, 2025 – Excerpt

B.    Plaintiff's Xactus Consumer Disclosure, Omni Financial and LVNV Funding Duplicate Tradelines, December 9, 2025 - Excerpt